**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

JOSEPH J. REID, SR.,

        Plaintiff,

    v.                                  No. 15-CV-761 (MAD/CFH)

V. MARZANO, Correction Officer,
Watertown Correctional Facility; et al.,

        Defendants.

---

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                              **OF COUNSEL:**

Joseph J. Reid, Sr.
15-R-1021
Plaintiff pro se
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. ERIC T. SCHNEIDERMAN           RYAN W. HICKEY, ESQ.
Attorney General for the                   Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Joseph J. Reid, Sr. ("Plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

defendants Correction Officer ("C.O.") V. Marzano, C.O. M. Verne, and Sergeant ("Sgt.") Matthew Rozanski violated his constitutional rights under the Eighth Amendment. Dkt. No. 1 ("Compl."). After sua sponte initial review of the complaint pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(b), District Judge Mae A. D'Agostino dismissed plaintiff's denial of due process claim against Deputy Superintendent ("Supt.") of Security Rockwood, and supervisory claim against the Superintendent of Watertown Correctional Facility ("Watertown C.F.")—the facility where plaintiff was incarcerated during the events described in his complaint. See Dkt. No. 8. Plaintiff's Eighth Amendment excessive force claims against C.O. Marzano and C.O. Verne, and failure to intervene claim against Sgt. Rozanski survived sua sponte review. Id. at 10-11.

Presently pending is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(a) for plaintiff's failure to exhaust administrative remedies before commencing this action. Dkt. No. 35. Plaintiff filed a response in opposition to the motion, and defendants filed a subsequent reply. Dkt. Nos. 41, 42. For the following reasons, it is recommended that defendants' motion be denied.

## I. Background

Plaintiff alleges that, on May 10, 2015, defendants Marzano and Verne used excessive force on him while escorting him to the Special Housing Unit ("SHU") at Watertown C.F. Compl. at 4. Plaintiff further alleges that defendant Rozanski ignored him when he attempted to tell him about the excessive force incidents. Id.

Plaintiff claims that he mailed two grievances to the Watertown Inmate Grievance Resolution Committee ("Watertown IGRC") regarding the May 10, 2015 excessive force

-2-

incident involving defendants.  See Declaration of Ryan W. Hickey ("Hickey Decl.") Exh. A[2] at 88-90.[3]  The first grievance, a handwritten letter addressed to the Watertown IGRC, was sent on May 11, 2015.  Id. at 89.  Plaintiff wrote a second grievance about one week later. Id.  Plaintiff claims that he never received a response to either of the two grievances he filed regarding the May 10, 2015 incidents.  Id.  He claims that the grievances he attempted to file were thrown out by correction officers.  Compl. at 2-3.  Other than the two grievances that plaintiff attempted to file, he did not write to anyone else regarding the incidents alleged in his complaint.  Hickey Decl. Exh. A at 95.

Curtis Fletcher, who serves as the Acting Inmate Grievance Program ("IGP") Supervisor at Watertown C.F. states that the Watertown IGP has no record of any grievances filed by plaintiff relating to the incidents alleged in his complaint.  Declaration of Curtis Fletcher ("Fletcher Decl.") ¶ 12.  Fletcher states that plaintiff did not file any grievances while incarcerated at Watertown C.F. from May 8, 2015 to May 28, 2015.  Id. ¶¶ 10, 12.

## II. Discussion

### A. Legal Standard For Motions Pursuant to Fed. R. Civ. P. 56(a)

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed

---

[2] Exhibit A to the Declaration of Ryan W. Hickey is a transcript of plaintiff's deposition, held on April 26, 2016 at Great Meadow Correctional Facility.  See Dkt. No. 35-6.

[3] When citing to plaintiff's deposition, the Court uses the page numbers generated by CM/ECF.

material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "In determining whether summary judgment is appropriate, [the Court] will resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Carey, 923 F.2d at 19. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. Partnership, 22 F.3d, 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se

-4-

> litigant's allegations, . . . or arguments that the submissions
> themselves do not "suggest," . . . that we should not
> "excuse frivolous or vexatious filings by pro se litigants," . . .
> and that pro se status "does not exempt a party from
> compliance with relevant rules of procedural and
> substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Mauldin v. Kiff, No. 11-CV-107-A, 2014 WL 2708434, at *4 (W.D.N.Y. June 16, 2014) (quoting Porter, 534 U.S. at 532). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Porter, 534 U.S. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170,

175 (2d Cir. 2006) (citation omitted). Until recently, courts in this district followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if the plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, the Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). As such, the special circumstances exception previously promulgated by the Second Circuit in Hemphill, is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

Although the Supreme Court's decision in Ross eliminates the "special circumstances" exception promulgated by Hemphill, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5. First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged action. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

### 1. Application

The parties here do not dispute that plaintiff failed to exhaust administrative remedies. Thus, the Court must only assess whether administrative remedies were available to plaintiff. In that regard, plaintiff sets forth two plausible arguments to establish that administrative remedies were not available to him. First, plaintiff alleges that he attempted to file grievances, but that those grievances were thrown out or otherwise

discarded by correction officers.  Compl. at 2-3.  Next, plaintiff alleges, in his response to defendants' motion for summary judgment, that he was never properly instructed on how to file a grievance.  Dkt. No. 41 at 1-2.  The Court will consider each of these arguments.

### a. Allegation that Grievances were Thrown Out by Correction Officers

Plaintiff alleges that he did not present the facts in his complaint through Watertown C.F.'s grievance program because correction officers discarded his grievances.  Compl. at 2-3.  Because correction officers discarded his grievances, he never received a response to any of the grievances that he attempted to file.  Id. at 3.

Administrative remedies may be unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Ross, 136 S. Ct. at 1860.  However, it is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding the lack of response at the first level of review.  See Khudan v. Lee, No. 12-cv-8147 (RJS), 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing the plaintiff's complaint where the plaintiff failed to appeal to the next level of review after failing to receive a response on his filed grievance).  Thus, even if an inmate suspects that his grievances were discarded, he or she must still appeal the grievance despite the lack of response at the first step of review.  Chiarappa v. Meyers, No. 09-CV-607(JTC), 2013 WL 6328478, at *5 ( W.D.N.Y. Dec. 5, 2013) ("[E]ven if plaintiff attempted unsuccessfully to file a grievance in a timely manner, the lack of a response does not relieve him of the requirement to timely appeal the grievance through all three steps of the grievance process."); Belile v. Griffin, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086,

at *8 (N.D.N.Y. Feb. 12, 2013), report and recommendation adopted by, 2013 WL 1291720 (N.D.N.Y. Mar. 27, 2013) ("Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that identifies which defendant, in particular, is responsible for discarding the grievances, are insufficient to excuse his failure to comply with the [Inmate Grievance Program]").

Here, plaintiff alleges, with no supporting evidence, that he twice attempted to file grievances regarding the incidents alleged in his complaint, but that those grievances were thrown out by correction officers. Compl. at 2-3. Plaintiff's only support for this accusation is his own assumption that because he did not receive a response to the grievances, then correction officers must have thrown out the grievances. Hickey Decl. Exh. A at 89-88. Even assuming—as the Court must—that plaintiff's allegations are true, he has still failed to exhaust administrative remedies because he failed to appeal his grievance to the next level of review. See Arce v. Keane, No. 01 Civ. 2648(BSJ), 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance"). Thus, plaintiff's accusation that correction officers discarded his grievances, alone, does not excuse his failure to exhaust administrative remedies.

### b. Failure to Receive Instruction on Watertown C.F.'s Grievance Program

Plaintiff alleges, in his response to defendants' motion, that he was never properly instructed on how to file a grievance while at Watertown C.F. Dkt. No. 41 at 2. Defendants call this assertion "specious" and argue that plaintiff's deposition testimony belies his claim

that did not know how to properly file a grievance. Dkt. No. 42 at 2.

Plaintiff explains, in his response to defendants' motion for summary judgment, that he was never "instructed, or given information on grievance policy and[] procedures through an orientation program." Dkt. No. 41 at 2. During plaintiff's deposition, counsel for defendants inquired whether plaintiff received an orientation about the grievance process when he arrived at Ulster Correctional Facility ("Ulster C.F."), where plaintiff was incarcerated before Watertown C.F. Hickey Decl. Exh. A at 16-17. Plaintiff responded that he did not receive an actual orientation, and that "it was just a quick breakdown." Id. at 17. Next, counsel for defendants inquired regarding plaintiff's knowledge of the grievance process:

> Q: At any point since arriving at Ulster [C.F.], did you receive any information about how to file grievances at the facility if you have a problem?
>
> A: No.
>
> Q: Are you generally familiar with that process?
>
> A: Yes.

Id. Later, after asking plaintiff to recite the process for filing a grievance, counsel for defendants asked:

> Q: When you arrived at Watertown Correctional Facility, as of that date, May 8th, 2015, had you ever filed an inmate grievance before?
> ...
> A. No.
>
> Q: At that time, were you familiar with the basic procedures that you just told me about, making a written grievance about your problems?

A. Yes.

Id. at 18-19.

Given plaintiff's alleged ignorance of the grievance process, the Court must assess whether the grievance procedure at Watertown C.F. was in fact "available" to plaintiff. Arnold v. Goetz, 245 F. Supp. 2d 527, 537 (S.D.N.Y. 2003). "An institution keeps an inmate ignorant of the grievance procedure when correctional officials either fail to inform him of the procedure altogether or fail to provide him with access to materials which could otherwise educate him about the use of that process." Id. at 538. Here, plaintiff equivocated at first when asked whether he received information about the grievance procedure when arrived at Watertown C.F. See Hickey Decl. Exh. A at 16-17. First, plaintiff claims that he received a "quick breakdown" of the grievance process upon his arrival at Ulster C.F. Id. at 17. Then, he states that, although he did not receive any information about how to file grievances at the facility, he is "generally familiar" with the grievance procedure. Id. Next, when asked whether he was familiar with basic grievance procedures upon his arrival at Watertown C.F. plaintiff responds with an unequivocal answer of "[y]es." Id. at 18-19.

Notwithstanding plaintiff's claims that he did not understand the grievance procedure at Watertown C.F., plaintiff testified during his deposition that he filed a grievance relating to a disciplinary hearing that took place while plaintiff was incarcerated at Watertown C.F.[4] Hickey Decl. Exh. A at 91-92. The disciplinary hearing at issue took place on May 14, 2015,

---

[4] Plaintiff's complaint also included a denial of due process claim regarding this disciplinary hearing, asserted against Watertown C.F.'s Deputy Supt. of Security, Rockwood. Compl. at 5. However, this claim was dismissed by District Judge D'Agostino's Decision and Order, entered August 20, 2015. Dkt. No. 8 at 11.

only four days after the alleged excessive force incident on May 10, 2015. See Compl. at 5. Plaintiff testified that the grievance regarding the disciplinary hearing was denied. Hickey Decl. Exh. A at 91-92.

Although defendants argue that plaintiff knew how to file a grievance, based on his deposition testimony, the Court is more concerned with plaintiff's contention that he did not know how to approach the situation he found himself in—how to complete the grievance process when a grievance goes unanswered. See Hickey Decl. Exh. A at 87-88; Dkt. No. 41 at 2.

In Williams v. Priatno, 829 F.3d 118 (2d Cir. 2016), a case factually similar to plaintiff's situation, the Second Circuit held that "[t]he regulations simply do not contemplate the situation in which [the plaintiff] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." Id. at 124. In Williams, the plaintiff, like plaintiff Reid here, attempted to file a grievance while he was in the SHU. Id. The plaintiff in Williams also contended that he gave his grievance to a correction officer to be filed, and that the correction officer must have thrown out the grievance since the facility had no record of the grievance being filed. Id. In Williams, the Court accepted the plaintiff's allegation that the correction officer failed to file the grievance, and held that "[u]nder that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that were actually filed." Id. Indeed, the Second Circuit notes in detail the confusing nature of the timelines set forth in the DOCCS regulations governing the grievance procedure. See id. at 124-25. Ultimately, the Second Circuit found that the DOCCS "regulations plainly do not describe a mechanism for appealing a grievance that

was never filed." Id. at 126.

The Court reaches the same conclusion as the Second Circuit reached in Williams. Plaintiff plainly knew how to file a grievance, and proves as much where he states that he twice attempted to give his grievance regarding the May 10, 2015 incident to a correction officer while he was in the SHU. See Hickey Decl. Exh. A at 89-91. However, it is clear to the Court from plaintiff's deposition testimony and his response to defendants' motion that plaintiff did not know how to proceed when he never received a response. Although plaintiff claimed that he was "generally familiar" with the process for filing a grievance, the Court posits that plaintiff's knowledge about how to file a grievance is useless if he does not know, and is not properly informed, of how to proceed after failing to receive a response. See Williams, 829 F.3d at 125 (finding that the plaintiff's circumstances "preclude[d] him from pursuing his unfiled and unanswered grievance"). Here, defendants have also failed to set forth any evidence showing that plaintiff received information about how to pursue administrative remedies when a grievance is unfiled and unanswered. See Washington v. Westchester Cnty. Dep't of Corr., No. 13 Civ. 5322(KPF), 2014 WL 1778410, at *4 (S.D.N.Y. Apr. 25, 2014) ("Most cases in this District considering the topic have explored, in detail, whether the correctional officers provided the inmate with a handbook explaining the grievance procedure, and whether officers explained the grievance procedure prior to the alleged incident; the record before the Court is . . . silent as to this information.") Additionally, the regulations that govern the appeal of an unfiled and unanswered grievance have not changed since the Second Circuit's decision is Williams, and remain as confusing and arduous as the Court explained in that decision. See Williams, 829 F.3d at 124-25 (explaining, in detail, that even if the plaintiff was aware of how to proceed on an unfiled and

unanswered grievance, the "procedural hurdles" faced by the plaintiff are "so confusing that . . . no reasonable prisoner can use them") (internal quotation marks and citation omitted).

In conclusion, the Court finds that defendants have not met their burden in showing that plaintiff failed to exhaust administrative remedies. Plaintiff insisted at his deposition, and in his response to defendants' motion, that he was not fully aware of the grievance procedure at Watertown C.F. See Hickey Decl. Exh. A at 16-19; Dkt. No. 41 at 2. Here, the Court finds that, even if plaintiff were aware of the appeal procedure, "the grievance procedures that were technically available to [plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.'" Williams, 829 F.3d at 126 (quoting Ross, 136 S. Ct. at 1859)).

Accordingly, the Court recommends that defendants' motion be denied.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 35) on plaintiff Joseph J. Reid Sr.'s complaint (Dkt. No. 1) be **DENIED**; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties in this action, pursuant to local rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F. 2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.

2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated: January 19, 2017
       Albany, New York

*/s/ Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge