**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH J. REID, SR.,**

                **Plaintiff,**

  vs.                                                  **9:15-CV-761
                                                              (MAD/CFH)**

**V. MARZANO,** *Correctional Officer, Watertown Correctional Facility***; M. VERNE,** *Correctional Officer, Watertown Correctional Facility***; and SGT. MATTHEW ROZANSKI,** *Watertown Correctional Facility***,**

                **Defendants.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**JOSEPH J. REID, SR.
15-R-1021**
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**         **RYAN W. HICKEY, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision, commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments. *See* Dkt. No. 1. After *sua sponte* review, the Court dismissed Plaintiff's due process claim against

Defendant Rockwood and the supervisory liability claim against the Superintendent of the Watertown Correctional Facility ("Watertown C.F."). *See* Dkt. No. 8. Plaintiff's Eighth Amendment excessive force claims against Defendants Marzano and Verne, and failure to intervene claim against Defendant Rozanski survived *sua sponte* review. *See id.* at 10-11.

On July 1, 2016, the remaining Defendants moved for summary judgment, alleging that Plaintiff failed to exhaust his administrative remedies before commencing this action. *See* Dkt. No. 35. In a Report-Recommendation and Order dated January 19, 2017, Magistrate Judge Hummel recommended that the Court deny Defendants' motion. *See* Dkt. No. 45. Specifically, Magistrate Judge Hummel found that, although Plaintiff knew how to file a grievance, he did not know how to proceed when he did not receive a response. *See id.* at 13. The report further found that Defendants failed to put forth any evidence showing that Plaintiff received information about how to pursue administrative remedies when a grievance is unfiled and unanswered. *See id.* (citing *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13 Civ. 5322, 2014 WL 1778410, *4 (S.D.N.Y. Apr. 25, 2014)). Further, Magistrate Judge Hummel found that "the regulations that govern the appeal of an unfiled and unanswered grievance have not changed since the Second Circuit's decision in Williams, and remain as confusing and arduous as the Court explained in that decision." *Id.* (citing *Williams v. Priatno*, 829 F.3d 118, 124-25 (2d Cir. 2016)).

On February 6, 2017, Defendants objected to the Magistrate Judge Hummel's Report-Recommendation and Order. *See* Dkt. No. 46. First, Defendants argue that the Court should reject the Report-Recommendation and Order because Plaintiff's "mere allegation that he submitted a grievance, unsupported by evidence, is not sufficient to excuse his failure to exhaust at the summary judgment stage." *Id.* at 1. Next, Defendants contend that the present matter is factually distinguishable from *Williams* since that case was before the court on a motion to

2

dismiss, whereas here Defendants have filed a motion for summary judgment. *See id.* at 2. As such, Defendants contend that Plaintiff's bald assertion that he filed two grievances, unsupported by any evidence other than his own conclusory allegations, are insufficient. *See id.*

Currently before the Court is Magistrate Judge Hummel's January 19, 2017 Report-Recommendation and Order and Defendants' objections thereto.

## II. DISCUSSION

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must

complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to Central Office Review Committee ("CORC"), which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). When a plaintiff presents a claim arising "directly out of a disciplinary or administrative segregation hearing . . . (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may be initially filed. *See*, *e.g.*, *Casey v. Brockley*, No. 9:13-

CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross v. Blake*, ___ U.S. ___ 136 S. Ct. 1850, 1855 (2016). "First, an administrative remedy may be unavailable when 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859). "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.'" *Id.* at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860).[1]

---

[1] In *Ross*, the Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. *See Ross*, 136 S. Ct. at 1856-57. Rather, it held that the only limit to the PLRA's exhaustion requirement "is the
(continued...)

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Defendants' motion for summary judgment should be denied. As Magistrate Judge Hummel noted, Plaintiff's accusation that correction officers discarded his grievances, alone, does not excuse his failure to exhaust administrative remedies. In response to Defendants' motion, Plaintiff alleges that he was never properly instructed on how to file a grievance while at Watertown C.F. *See* Dkt. No. 41 at 2. Plaintiff's testimony at his deposition demonstrated that, although he had a basic knowledge of the grievance process, he never received a formal orientation regarding the grievance process, just a "quick breakdown." Dkt. No. 35-6 at 16-19. Although the record demonstrates that Plaintiff knew how to file a grievance, the true issue, as identified by Magistrate Judge Hummel, is the procedure Plaintiff was required to follow in his situation: how to complete the grievance process when a grievance (or two) goes unanswered. *See id.* at 87-88; Dkt. No. 41 at 2.

In *Williams*, the Second Circuit had to determine whether administrative remedies were "available" when the plaintiff's grievance was allegedly never filed and the plaintiff received no response. *See Williams*, 829 F.3d at 120-21. The Second Circuit concluded that the regulations do not clearly outline the process to appeal an unfiled and unanswered grievance. *See id.* at 124. As such, the Second Circuit held that "the grievance procedures that were technically available to

---

[1](...continued)
one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Id.* at 1862; *see also Williams*, 829 F.3d at 123 (recognizing that the framework set forth in *Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) and *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), setting forth a "special circumstances" exception to the PLRA's exhaustion requirement has been abrogated in part by *Ross*). As such, the Supreme Court specifically found that an inmate's mistaken belief that he has exhausted his administrative remedies, even where that belief seems reasonable, does not make the administrative remedy unavailable. *See id.* at 1858.

6

[the plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859).

Defendants' attempt to distinguish the *Williams* case from the present matter is unpersuasive. In *Williams*, the plaintiff, like Plaintiff Reid here, attempted to file a grievance while in the SHU. *See Williams*, 829 F.3d at 124. The plaintiff in *Williams* also contended that he gave his grievance to a correction officer to be filed, and that the correction officers likely threw away the grievance since the facility had no record of the grievance being filed. *See id.* Accepting the plaintiff's allegations, the court held that "[u]nder that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that were actually filed." *Id.* The Second Circuit continues to note in detail the confusing nature of the timelines set forth in the DOCCS regulations governing the grievance procedure. *See id.* at 124-25.

Here, although Plaintiff clearly knew how to file a grievance while in the SHU, accepting Plaintiff's deposition testimony as true, it is clear that Plaintiff did not know how to proceed when he never received a response. Plaintiff's general knowledge of how to file a grievance was rendered useless if he was not properly informed how to proceed after not receiving a response. Plaintiff's situation was further complicated by the fact that the incident at issue occurred on May 10, 2015 and Plaintiff was transferred from Watertown C.F. on May 28, 2015. *See* Dkt. No. 35-3 at ¶¶ 10, 12. Indeed, in *Williams*, the Second Circuit noted that the "obscurity" of the regulations was further "compounded by the fact that Williams was transferred to another facility approximately two weeks after giving his grievance to the correction officer." *Williams*, 829 F.3d at 126. Moreover, Defendants did not put forth any evidence demonstrating that Plaintiff received information about how to pursue administrative remedies when a grievance is unfiled

7

and unanswered. *See Washington v. Westchester Cnty. Dep't of Corr.*, No. 13 Civ. 5322, 2014 WL 1778410, *4 (S.D.N.Y. Apr. 25, 2014).

In their objections, Defendants contend that allowing this result "would undermine the exhaustion requirement, as it would permit inmates to circumvent the exhaustion rules on the basis of the *mere allegation* of submitting a grievance, without supporting evidence." Dkt. No. 46 at 2 (emphasis in original). Defendants argue that such a result would render the exhaustion requirement meaningless, which was clearly not intended by the PLRA. *See id.* First, it is unclear what evidence Defendants expect Plaintiff to produce of his grievances that were allegedly discarded by corrections officers. Although Plaintiff would have ideally made a photocopy of his grievances for his own personal file, inmates in the SHU do not have regular access to the law library like inmates in the general population. Moreover, Plaintiff's position is supported by his deposition testimony, which is sufficient to withstand Defendants' motion for summary judgment. Finally, it is not the Court who has created this unfortunate situation. Rather, it is DOCCS' borderline incomprehensible regulation governing this situation that is to blame. In *Williams*, the Second Circuit informed DOCCS how this situation could be avoided going forward. Specifically, the *Williams* court stated as follows: "To avoid confusion going forward, we recommend that DOCCS revise its grievance procedures to instruct inmates how to appeal grievances that were not properly filed by prison staff, and how to appeal a grievance, to which the inmate never received a response, after being transferred." *Williams*, 829 F.3d at 126-27. As such, it is not the Court that has created this situation, but DOCCS itself.

Accordingly, the Court finds that Magistrate Judge Hummel correctly determined that the Court should deny Defendants' motion for summary judgment.

Finally, in their objections, Defendants request that the Court schedule an evidentiary hearing in the event that their motion for summary judgment is denied. Since disputed factual issues as to exhaustion are to be decided by the Court and not a jury, the Court grants Defendants' request and will schedule an exhaustion hearing forthwith. *See Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011).

### III. CONCLUSION

After carefully considering the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Hummel's January 19, 2017 Report-Recommendation and Order is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that Defendants' request for an exhaustion hearing is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall schedule an exhaustion hearing in consultation with the parties and the Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 17, 2017
      Albany, New York

Mae A. D'Agostino
U.S. District Judge