**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JOSEPH J. REID, SR.,

                Plaintiff,

      v.                                     No. 9:15-CV-761
                                        (MAD/CFH)

V. MARZANO, Correction Officer,
Watertown Correctional Facility; et al.,

                    Defendants.

_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                          **OF COUNSEL:**

Joseph J. Reid, Sr.
15-R-1021
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953
Plaintiff pro se

HON. ERIC T. SCHNEIDERMAN          RYAN W. HICKEY, ESQ.
Attorney General for the                  Assistant Attorney General
   State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

## REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Joseph J. Reid, Sr. ("plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Correction

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Officer ("C.O.") V. Marzano, C.O. M. Verne, and Sergeant ("Sgt.") Matthew Rozanski – who at all relevant times were employed at Watertown Correctional Facility ("Watertown") – violated his constitutional rights under the Eighth Amendment. Dkt. No. 1 ("Compl."). Presently pending before the Court is defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(a) for lack of jurisdiction under Heck v. Humphrey, 512 U.S. 447 (1994). Dkt. No. 62. Plaintiff filed a response in opposition to the motion, and defendants filed a reply. Dkt. Nos. 65, 68. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

### A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection ll infra. Plaintiff alleges that on May 10, 2015, defendant C.O. Marzano grabbed the back of his neck and slammed him face first into the wall in the mess hall. Compl. at 4; Dkt. No. 10-1 at 1. Upon releasing plaintiff, C.O. Marzano kicked him in his rear end and told him to return to his unit. Compl. at 4. On return to his unit, plaintiff attempted to inform defendant Sgt. Rozanski of what had occurred and was ignored. Id. Plaintiff, frustrated with the lack of help, picked up a chair and slammed it to the ground. Dkt. No. 10-1 at 2. The acting officer of the unit called plaintiff to his desk, asked for plaintiff's I.D., and inquired if he had a problem. Id. Plaintiff replied, "[w]hy? Do you want to jump on me like your partner?" Id. Plaintiff again attempted to explain the incident in the mess room to the acting officer of the unit, but was ignored. Id.

Plaintiff again attempted to explain to Sgt. Rozanski the incident in the mess hall. Dkt. No. 10-1 at 3. At the same time, plaintiff noticed C.O. Marzano motioning for the other inmates to vacate to the sleeping quarters. Id. C.O. Marzano then "rushed [him], head down, wrapping his arms around [plaintiff's] waist, [and] tackl[ed] [him] to the ground." Id. Plaintiff alleges he did not resist as he was rolled onto his stomach and handcuffed. Id. Plaintiff was then escorted to the SHU[2] by Sgt. Rozanski, C.O. Marzano, and other non-party officers. Id. Thereafter, Sgt. Rozanski relieved C.O. Marzano of his duties for the day. Dkt. No. 10-1 at 3. C.O. Verne opened the door to the entrance of SHU, put on a black glove, and smacked him across the face, stating "[g]et this stupid nigger inside." Id.; Compl. at 4. C.O. Verne and a non-party officer then escorted plaintiff to the frisk room. Dkt. No. 10-1 at 4. C.O. Verne ordered plaintiff to face the wall and told him "if [he] did anything other than what [he] was told that [he'd] get alot [sic] more than a good smack in the face." Id.; Compl. at 4. C.O. Verne instructed plaintiff to place one hand on each wall and spread his legs apart. Dkt. No. 10-1 at 4. Plaintiff alleges that, thus far, he complied with all instructions C.O. Verne had given him in the frisk room. Id. C.O. Verne then grabbed plaintiff by his forehead and asked if he "like[d] hitting officers?" Id. Plaintiff told C.O. Verne that he did not hit anyone. Id. C.O. Verne then forcefully pushed plaintiff to the ground and re-cuffed him. Id.; Compl. at 4. C.O. Verne jabbed plaintiff in the ribs and smacked him in the mouth with a closed fist after he placed him in restraints. Id. C.O. Verne placed plaintiff back up against the wall before kicking his feet and pushing his waist against the wall

---

[2] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

as he "count[ed] in slow rhythm as he [did] some kind of exercises off [plaintiff's] back and laugh[ed]." Id.; Dkt. No. 10-1 at 5. Sgt. Rozanski opened the door and told C.O. Verne that he better "start wrapping the fun up" because a nurse was coming. Dkt. No. 10-1 at 5. Sgt. Rozanski and C.O. Verne exited the frisk room, and a non-party officer finished the search without incident. Id.

Sgt. Rozanski and a non-party officer then escorted plaintiff to his cell. Dkt. No. 10-1 at 5. Sgt. Rozanski asked plaintiff whether he had any injuries to report. Id. When Plaintiff began to describe his back and lip pain, Sgt. Rozanski interrupted him by repeating his question. Id. Plaintiff then stated that he did not have any injuries to report. Id. Plaintiff contends that Sgt. Rozanski replied, "great, cause these guys decide if you eat or not." Id. Plaintiff was then placed in his cell. Id.

## B. Defendants' Recitation of the Facts

In support of this motion, defendants filed a Statement of Material Facts.[3] On May 10,

---

[3] Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts

2015, Sgt. Rozanski and C.O. Marzano reported to the I-1 housing unit at Watertown in response to non-party supervising officer C.O. Simmons' request for assistance. Dkt. No. 62-2 ¶ 3. C.O. Simmons told the officers that plaintiff had a violent outburst, where he yelled at C.O. Simmons and threatened to fight him. Id. ¶ 4. C.O. Marzano approached plaintiff and ordered him to exit the housing unit to an outdoor "porch" area in an effort to separate him from other inmates. Id. ¶ 5. Plaintiff refused C.O. Marzano's direct orders, turned away from him, and stated, "I'm not going anywhere and you better not touch me." Id. ¶ 6. Plaintiff suddenly spun toward C.O. Marzano and punched him in the cheek. Id. ¶ 7. C.O. Marzano wrestled plaintiff to the ground, secured his arms behind his back, and applied handcuffs. Id. ¶ 8. C.O. Marzano was then relieved of his duty and vacated the area. Id. ¶ 9. As a result of the incident, C.O. Marzano sustained injuries, including pain and inflammation in his right cheek, a sprained shoulder, and a chipped bone in his right elbow. Id. ¶ 10.

Thereafter, Sgt. Rozanski and two non-party officers escorted plaintiff from the I-1 housing unit to the SHU without incident. Dkt. No. 62-2 ¶ 11. Prior to placement in his cell, C.O. Verne brought plaintiff to the strip frisk room for "normal search procedures." Id. ¶ 12. C.O. Verne removed plaintiff's handcuffs, ordered plaintiff to place his hands high and flat on the wall, and not to move unless instructed. Id. ¶¶ 13, 14. During the search, plaintiff repeatedly attempted to back away from the wall and turn toward C.O. Verne. Id. ¶ 13. C.O. Verne gave plaintiff several direct orders to comply with the strip frisk. Id. ¶ 16. Plaintiff aggressively turned

---

that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

away from the wall with his arms raised and hands closed in fists.  Id.  In response, C.O. Verne grabbed plaintiff's right arm and left shoulder, and used his leg to sweep plaintiff's legs from underneath him to bring him under control.  Id. ¶ 17.  A non-party officer relieved C.O. Verne and completed the strip frisk without incident.  Id. ¶ 18.

As a result of the May 10, 2015 incident with C.O. Marzano, plaintiff was charged with criminal assault.  Dkt. No. 62-2 ¶ 19.  On May 13, 2016, plaintiff pleaded guilty in Jefferson County Court to Assault in the Third Degree.  Id. ¶ 20.  Plaintiff was sentenced to time served and a surcharge of $200.  Id. ¶ 23.  Plaintiff waived his right to appeal the May 13, 2015 conviction and the resulting sentence or contest any jurisdictional or technical deficiencies in the criminal proceedings.  Id. ¶ 24.

Also as a result of the May 10, 2015 incident, plaintiff received three misbehavior reports,[4] and a Tier III disciplinary hearing was conducted before Hearing Officer Rockwood.  Dkt. No. 62-2 ¶ 25.  On May 21, 2015, H.O. Rockwood found plaintiff guilty of assault on staff (100.11), violent conduct (104.11), two counts of creating a disturbance (104.13), two counts of refusing a direct order (106.11) and violation of strip frisk procedures (115.10).[5]  Id.  The hearing officer concluded that: (1) plaintiff refused C.O. Marzano's orders to leave the I-1 dorm and "then spun towards him [and] started swinging [his] fists at Marzano, striking Marzano in the right cheek"; and (2) "refused to follow frisk procedures" and "turned toward [Verne] with clenched fists [and]

---

[4] Only two misbehavior reports are the subject of the current proceeding.  The first misbehavior report, by C.O. Marzano, charged plaintiff with assault on staff (100.11), violent conduct (104.11), creating a disturbance (104.13), refusing a direct order (106.11).  Dkt. No. 62-5 at 12.  The second misbehavior report, by C.O. Verne, charged plaintiff with creating a disturbance (104.13), refusing a direct order (106.11), violation of strip frisk procedures (115.10), and violent conduct (104.11).  Id. at 11.

[5] H.O. Rockwood found plaintiff guilty of assault on staff (100.11) and violent conduct (104.11) only based on C.O. Marzano's misbehavior report.  Dkt. No. 62-2 ¶ 25.

force was used by C.O. Verne" to regain control.  Id. ¶¶ 26, 27.  Plaintiff was sentenced to 270

days of SHU confinement; 270 days loss of recreation, commissary, and phone privileges; and

one year of "good time credit."  Id. ¶ 28.  On July 31, 2015, plaintiff's disciplinary hearing was

affirmed on administrative appeal.  Id. ¶ 29.


## II. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed material

facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any," which support the motion.  FED. R.

CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it may

affect the outcome of the case as determined by substantive law, such that "a reasonable jury

could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve

all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli,

113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18,

19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986)) (internal quotation marks omitted).  A non-moving party must support such

assertions by evidence showing the existence of a genuine issue of material fact.  Id. "When

7

no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).


### III. Discussion[6]

Plaintiff claims that defendants C.O. Marzano and C.O. Verne subjected him to excessive force in violation of the Eighth Amendment. See Compl. Plaintiff also claims that Sgt. Rozanski failed to intervene to protect him from C.O. Marzano and C.O. Verne. Id. Defendants argue that plaintiff's claims of excessive force against defendants C.O. Marzano and C.O. Verne must be

---

[6] All unpublished opinions cited to by the Court in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

dismissed under the Heck doctrine because "a favorable judgment in this action would necessarily imply the invalidity of plaintiff's underlying criminal and inmate disciplinary convictions." Dkt. No. 62-1 at 3. In reply, plaintiff argues that his excessive force claims should be exempt from the Heck doctrine because "an assault conviction does not bar an individual from bringing a claim of excessive force under section 1983." Dkt. No. 65 at 24.

In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus.

Heck, 512 U.S. 477, 486-87 (1994). Therefore, when an inmate seeks damages in a § 1983 action, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487. Where the Heck doctrine applies, a plaintiff "ha[s] no cause of action under § 1983." Poventud v. City of New York, 750 F.3d 121, 130 (2d Cir. 2014).

Defendants posit that plaintiff's "exact scenario was recently confronted in Shapard v. Attea, No. 08-CV-6146 CJS, 2016 WL 5871360 (W.D.N.Y. Oct. 7, 2016)." Dkt. No. 62-1 at 9. In Shapard, the plaintiff, an inmate, pleaded guilty to assaulting a corrections officer in violation of New York Penal Law § 120.05(7). Shapard, 2016 WL 5871360, at *1. Three years later, the plaintiff commenced an action in federal court alleging that three corrections officers "viciously

assaulted" him in retaliation for filing grievances. Id. at 2. The plaintiff named as a defendant the corrections officer he had pleaded guilty to assaulting. Id. The plaintiff contended that he never assaulted the officers and was attacked without provocation. Id. The defendants moved for summary judgment, arguing that the plaintiff's excessive force claim was barred by Heck. Id. at *3. The Court concluded that the plaintiff's "claims that he did nothing whatsoever to warrant any use of force by the Defendants, that they attacked him without warning as retaliation for grievances that he had filed, and that he did not defend himself even though they were beating him" were "utterly incompatible with his conviction for assaulting [the defendant]." Id. at 7. Thus, such claims, if proven at trial, would "necessarily imply the invalidity of his conviction for assault." Id. The Court expressly noted that the plaintiff "repeatedly made [these] claim[s] in his Complaint, his sworn disciplinary hearing testimony and his sworn deposition testimony," and these claims of actual innocence were "utterly incompatible" with his assault conviction. Id.

### A. C.O. Marzano

Here, as in Shapard, plaintiff pleaded guilty in Jefferson County Court to assaulting defendant C.O. Marzano, the same officer he now alleges attacked him without provocation. Shapard, 2016 WL 5871360, at *1, 2; see Dkt. No. 62-6. Plaintiff testified at his disciplinary hearing that he "didn't swing at nobody," and that it was "impossible" for him to be found guilty on all of the disciplinary charges. See Dkt. No. 62-5 at 22, 23, 30. During discovery of the instant case, plaintiff testified at a deposition that he was innocent, never assaulted C.O. Marzano, and only pleaded guilty to the criminal assault charge "to make it out to [his] son." Dkt. No. 62-4 at 112. During his deposition, plaintiff also testified that he did not resist while C.O.

10

Marzano brought him to the ground and handcuffed him.  Id. at 48.  As in Shapard, plaintiff's statements are "utterly incompatible with his conviction for assaulting" C.O. Marzano.  Shapard, 2016 WL 5871360, at *7.  By pleading guilty to Assault in the Third Degree in court, plaintiff admitted that he intended to or recklessly "cause[d] physical injury to another person."  See N.Y. PENAL LAW §§ 120.00 (1), (2).  This admission directly contradicts plaintiff's sworn statements in his May 2015 disciplinary hearing and April 2016 deposition that he did not assault C.O. Marzano.  See Dkt. Nos. 162-4; 162-5.  Thus, "under Heck, a 'judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction.'"  Wiggins v. Figueroa, No. 13-CV-1731(JS)(SIL), 2015 WL 729730, at *4 (E.D.N.Y. Feb. 18, 2015) (quoting Heck, 512 U.S. at 487)).

Although it is "well-established that an excessive force claim does not usually bear the requisite relationship under Heck to mandate its dismissal", McGrew v. Holt, No. 6:13-CV-792 (GLS/TWD), 2015 WL 736614, at *4 (N.D.N.Y. Feb. 20, 2015), based on the evidence before the Court, a finder of fact could not reasonably conclude that even if plaintiff struck C.O. Marzano, C.O. Marzano used excessive force.  Dkt. No. 62-1 at 11.  Following the rationale of the Western District in Shapard, Heck would not apply if plaintiff had acknowledged that he assaulted C.O. Marzano, but insisted that C.O. Marzano subsequently used excessive force.  See Shapard, 2016 WL 5871360, at *4; but see Jeanty v. County of Orange, 379 F. Supp. 2d 533, 543-44 (S.D.N.Y. 2005) ("[A] judgment in favor of plaintiff on his § 1983 action would not establish the invalidity of his conviction for [assault] . . . [because] a jury could reasonably conclude that even though [the plaintiff] assaulted the [defendant corrections officer], after [the plaintiff] had been subdued, he was subjected to excessive force by the individual defendants

. . . . [T]he jury need only decide whether the individual defendants used excessive force against plaintiff after that assault."). Here, plaintiff has done the opposite. As the Western District concluded in Shapard, "where the Plaintiff's theory of his excessive force claim . . . was that he never hit the officer and was attacked without provocation . . . the plaintiff's version of events . . . would in fact imply the validity [sic] of his conviction, and therefore Heck did bar his claims." Shapard, 2016 WL 5871360, at *11. Here, plaintiff's excessive force claim against C.O. Marzano is based on the theory that he never hit C.O. Marzano, and that C.O. Marzano attacked him without provocation. Dkt. No. 62-4 at 48, 112. Accepting plaintiff's version of the events requires the fact finder to conclude that plaintiff did not assault C.O. Marzano, which creates a factual contradiction that falls squarely within the ambit of Heck. But cf. Jeanty, 379 F. Supp. 2d at 544-45 (concluding that because a jury could reasonably find that the plaintiff assaulted the defendant corrections officer *and* was still subjected to excessive force, accepting the plaintiff's version of events would *not* imply the invalidity of the underlying conviction.). A judgment in plaintiff's favor would necessarily invalidate his May 2016 criminal conviction where he pleaded guilty to Assault in the Third Degree against C.O. Marzano. Therefore, the Heck doctrine bars plaintiff's excessive force claim against C.O. Marzano. Heck, 512 U.S. at 487. Accordingly, it is recommended that defendants' motion for summary judgment on this ground be granted.[7]

---

[7] In recommending the dismissal of all claims against C.O. Marzano, the undersigned recommends that the dismissal be without prejudice, but that plaintiff only be permitted to attempt to bring such claim in the future if his assault conviction is invalidated.

**B. C.O. Verne**

Defendants argue that plaintiff's excessive force claim against C.O. Verne is barred by Heck because "plaintiff was convicted of . . . refusing Officer Verne's direct orders and failing to comply with strip frisk procedures at his May 21, 2015 Tier III disciplinary hearing." Dkt. No. 62-1 at 12.

In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended the Heck doctrine to disciplinary proceedings, holding that a plaintiff's procedural due process claim regarding a prison disciplinary hearing was not cognizable under § 1983 where the due process claim necessarily implied the invalidity of the disciplinary disposition and/or punishment unless the disposition has been reversed. Balisok, 520 U.S. at 650. "The rule announced in Heck v. Humphrey thus applies whenever a prisoner challenges the fact or length of his conviction or sentence. This includes situations in which an inmate challenges the denial of 'good time' credits, where such denial impacts the duration of his confinement." Phelan v. Hersh, No. 9:10-CV-0011 (GLS)(RFT), 2010 WL 277064, at *3 (N.D.N.Y. Jan. 20, 2010) (citing Balisok, 520 U.S. at 646-48; Higgins v. Coombe, No. 95 Civ. 8696(RCC), 1999 WL 760658, at *3-4, (S.D.N.Y. Sep. 24, 1999); Odom v. Pataki, No. 00 Civ. 3727, 2001 WL 262742, at *3-4 (S.D.N.Y. Mar. 15, 2001)); see Tafari v. McCarthy, 714 F. Supp. 2d 317, 371 (N.D.N.Y. 2010) ("In Edwards v. Balisok . . . , the Supreme Court extended the Heck rule to prisoners' challenges to prison disciplinary proceedings *that resulted in a loss of good time credits*.") (emphasis added). In Peralta v. Vasquez, 467 F.3d 98 (2d Cir. 2006), the Second Circuit held:

> a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable

> termination rule, *but that he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement.*

Peralta, 467 F.3d at 104 (emphasis in original).  The Court concluded that

> that the purpose of the Heck favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to their term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment), must be attacked through a habeas petition.

Id.

### 1. Does the Heck Doctrine Apply?

Although plaintiff  attempted to set forth a Fourteenth Amendment due process claim in his complaint, the Court dismissed the claim sua sponte after an initial review pursuant to 42 U.S.C. § 1915(e), concluding that "plaintiff has not alleged facts which plausibly suggest that he enjoyed a protected liberty interest in being free from any sanctions that might have been imposed . . . ."  Dkt. No. 8 at 8-9.  Only plaintiff's Eighth Amendment excessive force claims against C.O. Marzano and C.O. Verne, and his failure to intervene claim against Sgt. Rozanski survived.  Id. at 10.  Plaintiff never filed an amended complaint curing the defects in his Fourteenth Amendment claim.  Heck, thereby, cannot apply to bar plaintiff's excessive force claim against C.O. Verne because the application of Heck is dependent on whether a plaintiff challenges "the denial of 'good time' credits, where such denial impacts the duration of his confinement."  See  Phelan, 2010 WL 277064, at *3 (citing Balisok, 520 U.S. at 646-48 (1997); see also Walker v. Johns, No. 9:16-CV-0437 (DNH/DJS), 2016 WL 4508358, at *3-4 (N.D.N.Y.

Aug. 29, 2016) (undergoing a Heck analysis when the plaintiff's complaint alleges claims of Fourteenth Amendment due process, Eighth Amendment excessive force, and First Amendment retaliation); Wynter v. Ramey, No. 9:11-CV-0257, 2013 WL 5465343, at *1, 5-6 (N.D.N.Y. Sept. 30, 2013) (undergoing a Heck analysis when the plaintiff's complaint alleges claims of Fourteenth Amendment due process and Eighth Amendment excessive force).   Although plaintiff asserted a Fourteenth Amendment due process claim that challenged his disciplinary hearing and, arguably, the loss of good time credits, the Court dismissed that claim sua sponte.[8] Dkt. No. 8 at 8-9.  Plaintiff's remaining excessive force claim and failure to intervene claim do not challenge the loss of good time credit nor does he seek expungement of the disciplinary determination.  See Tafari, 714 F. Supp. 2d at 371; cf. Crum v. Dodrill, 562 F. Supp. 2d 366, 378 (N.D.N.Y. 2008).[9]  Accordingly, Heck does not apply to bar plaintiff's excessive force claim against C.O. Verne.[10]   Therefore, it is recommended that defendants' motion for summary judgment on this ground be denied.

---

[8] Had plaintiff successfully cured the defects in his due process claim and declined, thereafter, to file a Peralta waiver, the undersigned likely would have concluded that such claim would be barred by Heck.

[9]Thereby, a Peralta waiver is not necessary because plaintiff's complaint does not set forth a claim challenging the loss of good time credit.  See id. (concluding that an inmate subject to mixed sanctions may challenge the sanctions affecting the conditions of his confinement only if he or she is willing to waive any challenge to the duration of his or her confinement.); cf. McEachin v. Selsky, 225 F. App'x 36, (2d Cir. 2007) (summary order) (vacating the district court's dismissal of the plaintiff's "mixed sanctions" retaliation and due process claims arising from the filing of a retaliatory misbehavior report, and remanding to the district court to provide, pursuant to Peralta, a waiver for "all claims relating to sanctions affecting the duration of his imprisonment in order to proceed with claims challenging the sanctions affecting the conditions of his confinement.").  Further, Peralta does not apply to plaintiff's excessive force against C.O. Verne because although his May 21, 2015 disciplinary hearing disposition resulted in the loss of one-year of good time credit, plaintiff does not challenge "the sanctions affecting his conditions of confinement."  See Peralta, 467 F.3d at 104.

[10] The undersigned does not conclude that such a claim could never be barred by Heck.  See generally Bonner v. Roszco, No. CIV S-11-1823-CMK-P, 2013 WL 164269 (E.D.C.A. Jan. 15, 2013).

## 2. <u>Heck</u> Analysis

In the alternative, even if this Court determines that plaintiff is challenging his loss of good time credit and that <u>Heck</u> is implicated, plaintiff's success on his excessive force claim against C.O. Verne would not "necessarily invalidate" his May 2015 disciplinary disposition. <u>Balisok</u>, 520 U.S. at 650. At the May 2015 disciplinary hearing, the hearing officer found plaintiff guilty of creating a disturbance (104.13), refusing a direct order (106.10), and refusing search or frisk (115.10). Dkt. No. 62-5 at 30.[11] The hearing officer based his determination on the "misbehavior report and testimony from C.O. Verne stating that [plaintiff] refused orders to follow frisk procedures . . . [and] turned toward him with clenched fists and force was used by C.O. Verne to gain control of [plaintiff]." <u>Id.</u> However, the underlying disciplinary disposition does not prevent a finding that C.O. Verne used excess force during or after the incident. <u>See</u> <u>Dabney v. Pegano</u>, No. 9:10-CV-1109 (GTS/TWD), 2013 WL 5464776, at *19 (N.D.N.Y. Sept. 30, 2013) (concluding that the plaintiff's disciplinary disposition finding him guilty of assault, weapons possession, refusing a direct order, and refusing a search and frisk did not preclude plaintiff's Eighth Amendment excessive force claim); <u>Jeanty</u>, 379 F. Supp. 2d at 543-44 ("[A] jury could reasonably conclude that even though the [plaintiff] assaulted the [defendant corrections officer] after the [plaintiff] had been subdued, he was subjected to excessive force by the individual defendants."); <u>Wynter</u>, 2013 WL 5465343, at *8 (concluding that the hearing officer's determinations were not necessarily incompatible with a finding that the defendants engaged

---

[11] Plaintiff was also charged and found guilty of assault on staff (100.11), but only as to C.O. Marzano. Dkt. No. 62-5 at 30.

in excessive force).  Therefore, if a fact finder were to accept plaintiff's version of the events and find in his favor, it would *not necessarily* imply the invalidity of his underlying May 21, 2015 disciplinary conviction.   Plaintiff was not found to have assaulted C.O. Verne.   Thereby, irrespective of whether plaintiff refused to follow orders during the frisk search, created a disturbance, and refused a search and frisk, the fact finder could conclude C.O. Verne subjected plaintiff to excessive force.  See Heck, 512 U.S. at 487.   Thus, should this Court find that Heck does apply to plaintiff's excessive force claim against C.O. Verne, the claim is not barred by Heck.  Under this alternative analysis, it is recommended that this claim proceed.


### C. Sgt. Rozanski

Plaintiff claims that Sgt. Rozanski "failed to protect [him] from being assaulted by corrections officers while being in immediate presence of violations, assault, [and] racial discrimination . . ." in violation of the Eighth Amendment.  Compl. at 5.

> In order to establish liability on the part of a defendant under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: (1) possessed actual knowledge of the use by another corrections officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force.

Lewis v. Mollette, 752 F. Supp. 2d 233, 244 (N.D.N.Y. 2010) (internal citation and quotation marks omitted).

In recommending defendants' motion for summary judgment be granted insofar as it relates to C.O. Marzano, there is no basis for plaintiff's claim against Sgt. Rozanski for failure

17

to intervene to protect plaintiff from C.O. Marzano because the undersigned has recommended plaintiff's underlying excessive force claim against him be dismissed.[12]   However, because the undersigned has found no basis to dismiss plaintiff's excessive force claim against C.O. Verne, and because defendants have not moved for dismissal of the failure to intervene claim, the undersigned recommends the failure to intervene claim, insofar as it relates to Sgt. Rozanski's failure to intervene to protect from C.O Verne, survive defendants' motion.

### IV. Conclusion

**WHEREFORE**, for he reasons stated herein, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 62) be **GRANTED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's claims against C.O. Marzano, the motion be be **GRANTED** and the claims **DISMISSED** without prejudice, and C.O. Marzano be terminated from this action;

(2) Plaintiff's claims against Sgt. Rozanski, insofar as they relate to Sgt. Rozanski's failure to protect plaintiff from C.O. Marzano, be **DISMISSED** without prejudice; and it is

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 62) be **DENIED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's claims against C.O. Verne, the motion be

---

[12] In recommending the dismissal of plaintiff's claim against Sgt. Rozanski, insofar as it relates to Sgt. Rozanski's failure to protect plaintiff from C.O. Marzano, the undersigned recommends that the dismissal be without prejudice, but that plaintiff only be permitted to attempt to bring such claim in the future if his assault conviction is invalidated.  See supra note 7.

**DENIED**;

(2) Insofar as it seeks dismissal of Plaintiff's claims against Sgt. Rozanski for failure to protect plaintiff from C.O. Verne, the motion be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

DATED:  September 18, 2017
        Albany, New York

*Christian F. Hummel*

Christian F. Hummel
U.S. Magistrate Judge